## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

| | |
|---|---|
| AMELIA SALTERS, ) | Civil Action No.: |
| f/k/a AMELIA WOODS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT** |
| vs. ) | Violation of Title VII: Harassment and |
| ) | Discrimination Based Upon Race and |
| CONDOLUX, INC., CONDOLUX ) | Color; Retaliation; Violation of the South |
| PROPERTIES, LLC, and CONDOLUX ) | Carolina Payment of Wages Act; Breach of |
| SALES & DEVELOPMENT, LLC, ) | Contract; Breach of Contract Accompanied |
| ) | by a Fraudulent Act |
| Defendants. ) | |
| _____ ) | **JURY TRIAL DEMANDED** |

The plaintiff above named, complaining of the acts of the above-named defendants, states as follows:

### PARTIES AND JURISDICTION

1. That the plaintiff is a resident and citizen of the County of Horry, State of South Carolina.

2. That, upon information and belief, the defendants Condolux, Inc., Condolux Properties, LLC, and Condolux Sales & Development, LLC ("Condolux" or "defendants") are South Carolina corporations doing business and maintaining offices and agents in the County of Horry, State of South Carolina.

3. That this court has federal question jurisdiction pursuant to 42 U.S.C. §2000e-2, 42 U.S.C. §2000e-3, 42 U.S.C. §2000e-5 ("Title VII") and 28 U.S.C. §1331.

4. That venue for all causes of action stated herein lies in the District of South Carolina, Florence Division in that, pursuant to 28 U.S.C. § 1391(b), the parties reside and the

1

defendants do business in said district, and a substantial part of the events giving rise to plaintiff's claims occurred there.

## CONDITIONS PRECEDENT

5. That plaintiff has exhausted all administrative remedies and conditions precedent, including timeliness, deferral and all other jurisdictional requirements necessary for the maintenance of the foregoing action, all of which are more fully described below. Moreover, the defendants each employed fifteen (15) or more employees at all relevant times as defined by Title VII and, as such, defendants are "employers" under Title VII and otherwise subject to said Act.

6. That on or about April 2, 2012, and as result of defendants' discriminatory conduct, all of which is more fully described below, plaintiff timely filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against defendants alleging discrimination based upon race, color and retaliation.

7. That on or about April 24, 2014, plaintiff received a Notice of Right to Sue from the EEOC regarding the complaint described above in paragraph 6.

8. That plaintiff has timely filed the foregoing action within ninety (90) days of the date on which she received the Notice of Right to Sue described above in Paragraph 7.

## FACTS

9. That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 8 hereinabove as fully as if set forth verbatim.

10. That plaintiff is African-American.

11. That defendants are all closely related entities; they share common ownership and control and constitute "integrated" or "joint" employers.

12. That the defendants hired plaintiff on or about April 25, 2010 to work as a Reservationist.

13. That on or about September 1, 2011, defendants promoted plaintiff to the position of Email Specialist.

14. That as an Email Specialist, plaintiff reported to Terry Seidlitz ("Seidlitz"), the Reservations Manager, who is Caucasian.  Seidlitz, in turn, reported to Stewart Brown, the Front Office Manager, who is also Caucasian and the son of the owners of defendants.

15. That plaintiff worked with approximately four (4) other employees at defendants - all of whom are Caucasian and all of whom were also supervised by Seidlitz.

16. That in fact, plaintiff was the only African-American employed at defendants and, upon information and belief, she was the first African-American hired by defendants.

17. That plaintiff performed her job duties at the defendants in an above-satisfactory fashion and otherwise maintained an excellent employment record there.  To this end, plaintiff was never disciplined during her entire employment at defendants; she received promotions and raises; and, she was told by management that she did a good job.

18. That despite the above, approximately six (6) months after plaintiff started working at defendants, Seidlitz and plaintiff's coworkers all began to discriminate and harass plaintiff due to plaintiff's race and color.

19. That said harassment and discrimination included, but it not limited to, the following:

>      (a)    Seidlitz and plaintiff's coworkers repeatedly called and referred to plaintiff as a "nigger."  Seidlitz and plaintiff's coworkers would call plaintiff a "nigger" at least three (3) times a week;
>
>      (b)    They would yell and scream at plaintiff;

3

(c) Whenever plaintiff used the restroom, they would spray it;

(d) Seidlitz would remark "Let the maid make the coffee," referring to plaintiff whenever the coffee needed to be made;

(e) In the beginning, plaintiff sat in the front of the room but then she was forced to sit in the back of the workroom, isolated from her coworkers;

(f) They would unjustly criticize plaintiff's work to their supervisors and the owners in an effort to get plaintiff disciplined or fired;

(g) They would constantly attempt to undermine and interfere with plaintiff's work performance and criticize plaintiff's work performance without any reason or cause; and

(h) Defendants withheld a pay raise, health insurance and bonuses from plaintiff.

20. That on or about November 16, 2011, plaintiff complained about the above treatment by giving a letter to Evelyn Brown, one of the owners of the defendants.

21. That plaintiff's typewritten letter referred to in Paragraph 20 above did not mention race discrimination or discrimination based on color, however, it did detail the ways in which Seidlitz and plaintiff's coworkers were undermining and criticizing plaintiff's job performance and it did state that "This environment is very…hostile."

22. That moreover, on or about November 16, 2011, when plaintiff provided the said letter to Evelyn Brown, Evelyn Brown asked plaintiff why plaintiff believed her supervisor and coworkers were treating her in this manner.

23. That plaintiff responded because they (Seidlitz and her coworkers) were racist and that they were intimidated by plaintiff because she is black and intelligent.

24. That in response, Evelyn Brown told plaintiff not to pay any attention to Seidlitz and her coworkers.

25. That after plaintiff's complaint described above the harassment and discrimination not only continued, it got worse.

26. That, as such, on or about March 28, 2012, plaintiff prepared a written memorandum detailing the racial harassment and discrimination against her. This time plaintiff's written complaint clearly and expressly alleged racial harassment and discrimination.

27. That on or about March 28, 2012, plaintiff gave the memorandum, which complained about race harassment and discrimination referred to in Paragraph 26 above, to Evelyn Brown's Administrative Assistant, Pam Fury ("Fury") and to Sherry Graves ("Graves") the Assistant Manager, both of whom are Caucasian. Plaintiff also put a copy of the said memorandum on Stewart Brown's desk.

28. That on that same day (on or about March 28, 2012), Seidlitz fired plaintiff without warning, notice, cause or explanation - all because plaintiff complained about race discrimination and harassment. In firing plaintiff, Seidlitz told plaintiff that Stewart Brown said plaintiff was fired.

## FOR A FIRST CAUSE OF ACTION: VIOLATION OF TITLE VII HARASSMENT/HOSTILE ENVIRONMENT BASED UPON RACE AND COLOR

29. That the plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 28 hereinabove as fully as if set forth verbatim.

30. That at all pertinent times defendants each employed fifteen (15) or more employees and, as such, each defendant is an "employer" as defined by Title VII, and otherwise subject to the said Act.

31. That defendants' conduct as described above was offensive and unwelcome, and plaintiff so advised defendants.

32. That said harassment described above was based on plaintiff's race and color.

33. That defendants' behavior humiliated plaintiff, unreasonably interfered with her work performance, affected the terms, conditions and privileges of her employment and otherwise caused plaintiff severe psychological and physical harm.

34. That defendants' actions as alleged above created a work environment that plaintiff found, and a reasonable person would find, hostile and abusive.

35. That plaintiff complained about the above-described harassment to defendants and defendants were otherwise on notice that the harassment was occurring (or should have been on notice) as it occurred openly and on a widespread basis at the defendants; and, defendants did not have any discrimination policies dealing with race (and color) harassment and discrimination during the time plaintiff was employed there.

36. That defendants wholly failed to take prompt and effective remedial action to end the harassment, and defendants continued to harass the plaintiff based upon plaintiff's race and color after plaintiff complained about the harassment and/or after defendants were aware, or should have been aware, of it.

37. That the actions of defendants in engaging in offensive verbal conduct and harassment based upon plaintiff's race and color constitute discrimination against plaintiff in violation of Title VII and the Civil Rights Act of 1991.

38. That as a result of the above, plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, depression, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation,

loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

39. That the defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the plaintiff, and therefore plaintiff is entitled to recover punitive damages from the defendants.

### FOR A SECOND CAUSE OF ACTION:
### VIOLATION OF TITLE VII
### RETALIATION

40. That the plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 39 hereinabove as fully as if set forth verbatim.

41. That at all pertinent times each defendant employed fifteen (15) or more employees and, as such, each defendant is an "employer" as defined by Title VII, and otherwise subject to the said Act.

42. That as alleged above, plaintiff complained to the defendants on two separate occasions that she was being harassed and discriminated against because of her race and color.

43. That plaintiff's complaints were made in good faith, and constitute protected activity under Title VII.

44. That defendants terminated plaintiff without warning, notice or cause and for false reasons the same day plaintiff complained about harassment and discrimination based upon race and color.

45. That defendants terminated plaintiff for making complaints of racial harassment and discrimination, and for opposing discrimination based upon race and color, all of which is in violation of 42 U.S.C. § 2000e-3.

46. That as a result of the above, plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, depression, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

47. That the defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the plaintiff, and therefore plaintiff is entitled to recover punitive damages from the defendants.

### FOR A THIRD CAUSE OF ACTION: VIOLATION OF THE SOUTH CAROLINA PAYMENT OF WAGES ACT (S.C. CODE ANN. § 41-10-10, ET. SEQ.)

48. That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 47 hereinabove as fully as if set forth verbatim.

49. That each defendant is an "employer" as defined by S.C. Code Ann. § 41-10-10 (1) of the Act.

50. That at the time of plaintiff's termination from defendants, defendants owed plaintiff wages in the form of bonuses in the amount of $2,000.00.

51. That the bonuses owed to plaintiff by defendants constitutes wages as defined by S.C. Code Ann. § 41-10-10(2) of the said Act.

52. That defendants have failed to pay plaintiff the wages due at the time said wages were due and, despite repeated demand, continue to refuse to pay plaintiff the said wages due.

53. That as such, defendants have violated the South Carolina Payment of Wages Act and, therefore, are liable to plaintiff for all wages due.

54. That defendants' violations of the said Act were willful, knowing and intentional and persist, despite repeated notice and, therefore, defendants are liable to plaintiff for treble damages.

55. That moreover, plaintiff seeks and is entitled to recover reasonable attorney's fees and costs and prejudgment interest from the defendants.

### FOR A FOURTH CAUSE OF ACTION:
### BREACH OF CONTRACT

56. That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 55 hereinabove as fully as if set forth verbatim.

57. That plaintiff and defendants entered into a contract of employment whereby plaintiff agreed to perform certain services for defendants, and defendants agreed to pay plaintiff a salary, benefits and bonuses.

58. That plaintiff performed the obligations and duties imposed upon her by the parties' agreement.

59. That despite the above, defendants failed to pay plaintiff the wages (in the form of bonuses) owed to her under the parties' agreement and thereby breached the contract.

60. That as a direct and proximate result of defendants' breaches as set forth above, plaintiff has suffered damages in the form of unpaid wages due as set forth above, and prejudgment interest.

## FOR A FIFTH CAUSE OF ACTION: BREACH OF CONTRACT ACCOMPANIED BY A FRAUDULENT ACT

61. That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 60 hereinabove as fully as if set forth verbatim.

62. That as alleged above, the parties entered into a contract whereby defendants agreed to pay plaintiff certain wages in the form of a salary, benefits and bonuses.

63. That defendants breached the said agreement by failing to pay plaintiff bonuses due.

64. That defendants had a fraudulent intent which related to the breach.

65. That defendants engaged in fraudulent acts which accompanied the breach.

66. That as a direct and proximate result of defendants' conduct as set forth above, plaintiff has suffered damages in the form of lost or unpaid wages, emotional distress, pain and suffering, loss of enjoyment of life, loss of professional standing, character and reputation, inconvenience, anxiety, depression, embarrassment, humiliation, personal and physical injuries and prejudgment interest.

67. That defendants' conduct as set forth above was undertaken willfully, wantonly, intentionally, and in reckless disregard for plaintiff's rights, and therefore plaintiff is entitled to recover punitive damages from the defendants.

WHEREFORE, plaintiff prays for the following relief against defendants:

(a)   As to plaintiff's First and Second Causes of Action, for such amount of actual and special damages as the trier of fact may find, (including lost back and future wages, income and benefits, expenses associated with finding other work, severe psychological harm, emotional distress, anxiety, depression, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and

reputation, and physical and personal injuries), punitive damages, the cost and disbursements of this action, including reasonable attorney's fees, prejudgment interest and for such other and further relief as the court deems just and proper;

    (b) As to plaintiff's Third Cause of Action, for such amount of actual and special damages as the trier of fact may find, (including all wages due), prejudgment interest, treble damages, the costs and disbursements of this action, including reasonable attorney's fees, and for such other and further relief as the court deems just and proper;

    (c) As to plaintiff's Fourth Cause of Action, for such amount of actual and special damages as the trier of fact may find, (including all wages due), prejudgment interest, the costs and disbursements of this action, and such other and further relief as the court finds just and proper; and

    (d) As to plaintiff's Fifth Cause of Action, for such amount of actual, special and punitive damages as the trier of fact may find, (including all wages due, emotional distress, pain and suffering, loss of enjoyment of life, loss of professional standing, character and reputation, inconvenience, anxiety, depression, embarrassment, humiliation, personal and physical injuries), prejudgment interest, the costs and disbursements of this action, and for such other and further relief as the court deems just and proper.

            HITCHCOCK & POTTS

            By: *s/A. Christopher Potts*
            Federal ID No.: 5517
            31 Broad Street, 2nd Floor
            Charleston, SC 29401
            Telephone: (843) 577-5000
            Fax: (843) 722-8512
            Email: hitchp@bellsouth.net
            *Attorneys for the Plaintiff*

Charleston, South Carolina
June 18, 2014